1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TONY R. LOW,

11          Plaintiff,                    No. 2:10-cv-2398 JFM (PC)

12       vs.

13   JOHN MCGINNESS, et al.,              ORDER AND

14          Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  This action is proceeding on plaintiff's complaint, filed September 7, 2010, in

18   which he raises a series of claims against the County of Sacramento (County) and numerous

19   officials and employees at the Sacramento County Jail (Jail) from a period during which plaintiff

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

1

was a pretrial detainee at the Jail.  This matter is before the court on defense motions to dismiss[1]

and to sever improperly joined claims, and on plaintiff's motion to compel discovery responses.

Defendants have filed four requests for judicial notice in connection with the

instant motions.  Plaintiff opposes one of the requests on the ground that it is a request for

judicial notice of documents in the record in this action.

Defendants have moved to dismiss this action under Fed. R. Civ. P. 12(b)(6).

Consideration of matters outside the scope of the pleadings would require conversion of the

instant motion to a motion for summary judgment.  See Fed. R. Civ. P. 12(d).  After review of

the record, the court has determined that it would be inappropriate to convert defendants' motion

to a motion for summary judgment at this stage of the proceedings.  Accordingly, with one

exception of defendants' request for judicial notice will all be denied without prejudice.  For the

reasons set forth infra, the court will take judicial notice of the state court's ruling on plaintiff's

challenge to his classification as a Total Separation, or T-Sep, inmate.

I.  Motions to Dismiss

A.  Standards for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss, the court must accept as true the allegations of

the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740

(1976), construe the pleading in the light most favorable to the party opposing the motion and

resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied,

---

[1]  The first motion to dismiss was filed on July 8, 2011 by defendants Sheriff John McGinness, Dr. Beach, Deputy J. Bell, Lt. Brelje (identified in the complaint as Brleje), Deputy S. Brown, Deputy Cabrera (identified in the complaint as Cabbera), Deputy Card, Deputy Chaussee, Chaplain Clements, Deputy Covington, L.V.N. Kathryn M. Gonzales, Deputy Hernandez, Deputy G. Hogan, Nurse Practitioner Jim, Deputy K. Joiner, Lt. Chet Madison, Deputy Maggini, Captain Eric Maness, Deputy Marino, Deputy Marsden, Sgt. Dan Morrissey, Deputy Picanco, Deputy Reeve, Sgt. Roberts, E. Roberts, Deputy Rose, Deputy Rouse, Deputy Takahashi, Deputy Thompson, Deputy Torrey, Deputy Vasquez, Deputy Woodward, and Deputy Yearwood.  The second motion to dismiss was filed on September 6, 2011 by defendant County. Many of the arguments raised in the two motions are identical; to the extent separate arguments are raised they will be addressed separately.

1  396 U.S. 869 (1969).  Moreover, pro se pleadings are held to a less stringent standard than those

2  drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  A motion to dismiss for failure

3  to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no

4  set of facts in support of the claim that would entitle him to relief.  See Hishon v. King &

5  Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also

6  Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

7            1.  Americans with Disabilities Act

8            In his first claim for relief, plaintiff alleges that defendants County, Gonzales, and

9  Jim discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. §

10  12112(a) (ADA), by "refusing to provide a reasonable accommodation to a qualified individual

11  with a disability" and "failing or refusing to take appropriate action to remedy the effects of the

12  discriminatory treatment of plaintiff."  Complaint, filed September 7, 2010, at 8-9.  Plaintiff

13  alleges that on seven separate dates he notified defendant Jim of the disability and requested a

14  reasonable accommodation.  Plaintiff further alleges that defendants Gonzales and the County of

15  Sacramento were notified of the alleged discrimination but failed to take any action to remedy it.

16  Plaintiff alleges that the jail only provides reading glasses, that he received two court orders to be

17  provided with prescription eye glasses, and that defendants failed to provide the glasses for five

18  months.  Plaintiff also alleges that as a result of the failure to provide him with prescription

19  eyeglasses he was unable to see court video exhibits during a preliminary hearing, to read posted

20  jail facility rules, or to participate in jail services, activities, or programs.

21            In order to state an ADA claim, plaintiff must allege that:

22      (1) he 'is an individual with a disability;' (2) he 'is otherwise
   qualified to participate in or receive the benefit of some public

23      entity's services, programs, or activities;' (3) he 'was either
   excluded from participation in or denied the benefits of the public

24      entity's services, programs, or activities, or was otherwise
   discriminated against by the public entity;' and (4) 'such exclusion,

25      denial of benefits, or discrimination was by reason of [his]
   disability.'

26

1   O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting

2   McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir.2004) in turn quoting Thompson v.

3   Davis, 295 F.3d 890, 895 (9th Cir.2002) (per curiam)).  Effective January 1, 2009, the ADA

4   provided in relevant part that:

5           The term "disability" means, with respect to an individual--

6           (A) a physical or mental impairment that substantially limits one or
            more major life activities of such individual;
7
            (B) a record of such an impairment; or
8
            (C) being regarded as having such an impairment (as described in
9           paragraph (3)).

10          (2) Major life activities

11          (A) In general

12          For purposes of paragraph (1), major life activities include, but are
            not limited to, caring for oneself, performing manual tasks, seeing,
13          hearing, eating, sleeping, walking, standing, lifting, bending,
            speaking, breathing, learning, reading, concentrating, thinking,
14          communicating, and working.

15          For purposes of paragraph (1)(C):

16          (A) An individual meets the requirement of "being regarded as
            having such an impairment" if the individual establishes that he or
17          she has been subjected to an action prohibited under this chapter
            because of an actual or perceived physical or mental impairment
18          whether or not the impairment limits or is perceived to limit a
            major life activity.
19
            (B) Paragraph (1)(C) shall not apply to impairments that are
20          transitory and minor. A transitory impairment is an impairment
            with an actual or expected duration of 6 months or less.
21
            (4) Rules of construction regarding the definition of disability
22
            The definition of "disability" in paragraph (1) shall be construed in
23          accordance with the following:

24          . . . .

25          (E)(i) The determination of whether an impairment substantially
            limits a major life activity shall be made without regard to the
26          ameliorative effects of mitigating measures such as–

(I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;

. . . .

(ii) The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.

(iii) As used in this subparagraph–

(I) the term "ordinary eyeglasses or contact lenses" means lenses that are intended to fully correct visual acuity or eliminate refractive error; and

(II) the term "low-vision devices" means devices that magnify, enhance, or otherwise augment a visual image.

42 U.S.C. § 12102.

Here, the gravamen of plaintiff's ADA claim is that he was denied prescription eyeglasses for a period of five months.  A vision impairment that can be corrected by ordinary prescription eyeglasses does not qualify as a "disability" within the meaning of the ADA.  See Kemppainen v. Aransas County Detention Center, 626 F.Supp.2d 672, 679 (S.D.Tex. 2009) (person whose vision impairment can be corrected with ordinary eyeglasses is not disabled under the ADA).  For this reason, plaintiff has failed to state a cognizable claim for relief under the ADA and this claim must be dismissed.

Dismissal without leave to amend is only proper where it is clear that a claim "could not be saved by any amendment."  Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  Here, it is clear that plaintiff's ADA claim could not be saved by amendment because his vision impairment is not a "disability" within the meaning of the ADA.  Accordingly, this claim should be dismissed without leave to amend.

/////

/////

2. <u>Dental Claim</u>

Plaintiff's second claim for relief is based on the following allegations.  On February 15, 2010 plaintiff was given a medical screening by an intake nurse.  Plaintiff informed the nurse that he had dental problems.  The nurse told plaintiff to fill out a yellow request form to see a dentist.  Plaintiff told the nurse that his back tooth was broken.  The nurse confirmed that plaintiff had to fill out the request form to be seen by a dentist.  During the first week of incarceration, plaintiff filled out numerous forms, none of which were answered.  On February 21, 2010, plaintiff saw defendant NP Jim.  He told defendant Jim about his dental problems and that he was in pain because of a broken tooth.  Defendant Jim told plaintiff it was "not his job to look into inmates mouths" but that he would prescribe Naprosyn.  Complaint, filed September 7, 2010, at 12.  Plaintiff filed another dental request.  <u>Id</u>.

On March 3, 2010, plaintiff was seen by defendant Beach, who told plaintiff he had a "large cavity" in tooth # 16, but that "it wouldn't kill plaintiff" so he could wait for treatment.  <u>Id</u>.  On March 9, 2010, plaintiff saw defendant Jim and told him the pain was getting worse.  <u>Id</u>. at 13.  Defendant Jim told plaintiff it was not his job to address dental problems and he renewed plaintiff's pain medication.  <u>Id</u>.  On March 10, 2010, plaintiff saw defendant Beach, who told plaintiff to stop complaining and that he "extracts teeth when he gets around to it."  <u>Id</u>.  Thereafter, plaintiff continued to file grievances and requests for dental care.  Plaintiff sent an appeal and a letter to defendant Maness.  <u>Id</u>. at 13-14.  Defendant Jim responded only by adjusting plaintiff's pain medication.  <u>See id</u>. at 14.  Defendant Gonzales responded to plaintiff's grievance by stating that she does not order emergency dental treatment and that plaintiff was on a waiting list.  <u>Id</u>.  Defendant Brelje confirmed defendant Gonzales' response.  <u>Id</u>.

On April 2, 2010, plaintiff was seen by defendant Beach, who declined to fill plaintiff's cavity and instead extracted the tooth.  <u>Id</u>. at 14-15.  Defendant Beach told plaintiff he would not deal with any other dental issues from plaintiff.  <u>Id</u>.  Thereafter, plaintiff continued to experience dental pain, request treatment, and receive pain medication through June 28, 2010.

1   Id. at 15-17.  On May 5, 2010, defendant Beach told plaintiff he would not fix plaintiff's cracked

2   tooth and "he 'advised' plaintiff to stop complaining about his dental problems."  Id. at 16.

3          Defendants seek dismissal of this claim on the grounds that plaintiff has failed to

4   allege facts sufficient to show that any of the defendants named in this claim acted with

5   deliberate indifference to his dental needs.  Specifically, defendants contend that none of the facts

6   show that anyone recognized that plaintiff had a serious dental need but disregarded it.

7   Defendants also contend that defendant Beach's decision to extract plaintiff's tooth rather than

8   fill it represents no more than a difference of medical opinion between plaintiff and defendant

9   Beach, which is insufficient to support a § 1983 claim of deliberate indifference to plaintiff's

10  health.[2]

11         Because plaintiff was a pretrial detainee at all times relevant to this action, the

12  instant claim is "analyzed under the Fourteenth Amendment Due Process Clause, rather than

13  under the Eighth Amendment."  Frost v. Agnos, 152 F.3d 1124, 1128 (1998) (citing Bell v.

14  Wolfish, 441 U.S. 520, 535 n. 16 (1979)).  The standards applicable to a claim of denial of

15  adequate medial or dental care under the Fourteenth Amendment are the same as those that apply

16  to a similar claim under the Eighth Amendment.  Frost, id. (citing Redman v. County of San

17  Diego, 942 F.2d 1435, 1441 (9th Cir. 1991).

18         In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that

19  inadequate medical care did not constitute cruel and unusual punishment cognizable under

20

21         [2]  Defendants also contend that plaintiff had the dental problems before he was
    incarcerated, because he told the nurse about them at intake, and for at least five years before he
22  was incarcerated.  Memorandum of Points and Authorities in Support of Motion to Dismiss and
    to Sever, filed July 8, 2011, at 5.  The latter contention is based on another complaint filed in this
23  court, included in one of defendants' requests for judicial notice.  For the reasons set forth supra,
    the court has declined to convert this motion to a motion for summary judgment and will
24  therefore not reach this part of defendants' argument.  In addition, defendants contend that a
    delay of eight weeks in obtaining a tooth extraction is not an "unusually long time to wait for a
25  tooth extraction, even for non-incarcerated citizens who have private insurance."  Memorandum
    of Points and Authorities at 5.  This argument, to be considered, would have to be supported by
26  evidence which, as noted above, will not be considered by the court on this motion.

                                                  7

1   § 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical

2   needs."  In applying this standard, the Ninth Circuit has held that before it can be said that a

3   prisoner's civil rights have been abridged, "the indifference to his medical needs must be

4   substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

5   cause of action.  Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429

6   U.S. at 105-06.

7          The Eighth Amendment prohibits state actors from acting with deliberate

8   indifference to an inmate's health or safety.  See Farmer v. Brennan, 511 U.S. 825 (1994).  A

9   "system of ready access to adequate dental care" is required by the Eighth Amendment, and

10  deliberate indifference to dental needs is proscribed.  Hunt v. Dental Dept., 865 F.2d 198, 200

11  (9th Cir. 1989).  An claim based on deliberate indifference to health or safety has two elements.

12  First, an inmate must show that he was "incarcerated under conditions posing a substantial risk of

13  serious harm."  Farmer, 511 U.S. at 834.  Second, the inmate must show that defendants acted

14  with "deliberate indifference" to that risk.  Id.  Deliberate indifference is shown by proof that a

15  prison official was "both aware of facts from which the inference could be drawn that a

16  substantial risk of serious harm exists" and that he drew the inference.  Id. at 837.

17         Deliberate indifference may found when prison officials deny, delay, or

18  intentionally interfere with medical treatment, or through the manner in which treatment is

19  provided.  See Estelle, at 104-05.  However, "mere delay . . ., without more, is insufficient to

20  state a claim of deliberate medical indifference;" the delay must also be harmful.  Shapley v.

21  Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In addition, a difference

22  of opinion between an inmate and a medical provider does not constitute deliberate indifference.

23  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

24         Viewing the allegations of the complaint in the light most favorable to plaintiff, as

25  the court must on this motion to dismiss, the complaint does not state a cognizable claim for

26  relief against defendant Jim.  Plaintiff alleges that defendant Jim responded each time to his

8

complaints of pain by prescribing or adjusting his pain medication, and nothing in plaintiff's allegations against defendant Jim would support an inference that defendant Jim acted with deliberate indifference to plaintiff's need for adequate dental care.

The claim is cognizable against the remaining individual defendants named therein. Viewed in the light most favorable to plaintiff, the facts alleged give rise to an inference that defendants Beach, Gonzales, Maness and Brelje all contributed to delay in treating plaintiff's tooth until the cavity could no longer be filled and the tooth required extraction. These three defendants should be required to answer this claim.

The County seeks dismissal on the grounds that there are no facts alleged which implicate municipal liability. To impose liability on a municipality in a § 1983 action, a plaintiff must suffer a deprivation of a right, privilege or immunity protected by federal law, and he must identify a government policy or custom which caused his injury. Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403 (1997). A municipality may not be held liable under § 1983 simply because it employs a tortfeasor. Id. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404.

Viewed in the light most favorable to plaintiff, the allegations of the complaint are sufficient to state a claim against the County based on a theory that the plaintiff's alleged injury was caused at least in part by the County's failure to provide an adequate system for emergency dental treatment. The County should be required to answer this claim.

3. Religion Claims

By his third claim for relief, plaintiff alleges violations of his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq. and the First Amendment. Plaintiff alleges that he made six requests for a holy Quran, Islamic prayer literature, and a religious diet while he was incarcerated at the jail, that only one request was answered, and that he was not provided with any of the requested items. Complaint at 17-18.

9

1   Plaintiff filed a state habeas corpus action seeking to be provided with an Arabic language copy

2   of the Quran. Id. at 18.  On June 26, 2010, plaintiff was given an English translation of the

3   Quran. Id. at 19.  On July 21, 2010, defendant McGinness, through defendant Maness, told the

4   state superior court judge that the jail had several hardcover copies of the Arabic Quran but that

5   inmates were not allowed to possess hardcover books so they would have to buy a paperback

6   copy for plaintiff. Id.  As of September 3, 2010, plaintiff had not received that copy. Id.

7   Plaintiff was not provided with a religious diet. Id.

8          Defendants seek dismissal of this claim on the ground that plaintiff has not

9   alleged any facts which show that his exercise of religious was substantially burdened.

10  Defendants contend that (1) RLUIPA does not require the jail to pay for plaintiff's religious

11  books; (2) he has failed to allege sufficient facts to suggest that the denial of a halal diet

12  substantially burdened his religious exercise; (3) he has failed to allege that the jail received

13  federal funding; (4) money damages are not available from individuals on a RLUIPA claim; and

14  (5) plaintiff has failed to state a claim under the First Amendment.

15         The First Amendment protects an inmate's right to free exercise of religion except

16  by regulations reasonably related to legitimate penological interests.  See Shakur v. Schriro, 514

17  F.3d 878, 883-84 (9th Cir. 2008).  RLUIPA prohibits correctional officials from placing a

18  substantial burden on an inmate's religious exercise "unless the burden furthers 'a compelling

19  governmental interest' and does so by 'the least restrictive means.'"  Cutter v. Wilkinson, 544

20  U.S. 709, 712 (2005) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).  "Directed at obstructions

21  institutional arrangements place on religious observances, RLUIPA does not require a State to

22  pay for an inmate's devotional accessories." Id. at 720 n.8.

23         Defendants were not required to provide plaintiff with a Holy Quran or any other

24  devotional material, see Cutter, supra, and plaintiff does not allege that he was prevented from

25  possessing his own devotional material.  This aspect of plaintiff's First Amendment and RLUIPA

26  claims should be dismissed.

1        In addition, plaintiff has failed to allege any facts which suggest that the failure to

2 provide a halal diet placed a substantial burden on the exercise of his Muslim faith.  This aspect

3 of plaintiff's First Amendment and RLUIPA claims should also, therefore be dismissed.

4        It is clear that the defect in plaintiff's claims concerning the alleged failure to

5 provide him with a Holy Quran cannot be cured by amendment, because jail officials were not

6 required by federal law to do so.  However, it is possible that the defects in plaintiff's claim

7 concerning the failure to provide a halal diet could be cured by amendment.  Accordingly,

8 plaintiff should be granted an opportunity to amend this aspect of his First Amendment and

9 RLUIPA claims.

10                    4. <u>Non-Legal Reading Material</u>

11        By his fourth claim for relief, plaintiff challenges the jail's failure to maintain a

12 library with non-legal reading materials.  Plaintiff alleges that he was confined to a cell twenty-

13 four hours a day and never provided with any reading material despite repeated requests.

14 Defendants seek dismissal of this claim on the ground that jail inmates do not have a

15 constitutional right to a general reading library.

16        Plaintiff does not allege that he was denied access to legal materials, and he cites

17 no authority for the proposition that the United States Constitution requires jails to maintain

18 general reading libraries.[3]  For that reason, these allegations do not give rise to a cognizable

19 claim for relief.  <u>See</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997).  This claim should be

20 dismissed without leave to amend.

21                    5. <u>Telephone Access</u>

22        In his fifth claim for relief, plaintiff claims that defendants County, McGinness,

23 Maness, and Brelje denied him "reasonable access" to a telephone.  Defendants seek dismissal of

24

25     [3] The only case cited by plaintiff in opposition to defendants' motion, <u>Thornburgh v.</u>
<u>Abbott</u>, 490 U.S. 401 (1989), does not stand for the proposition that jails are required to maintain

26 a general reading library for inmates.

1   the claim on the grounds that plaintiff has failed to allege sufficient facts to support a claim under

2   the First Amendment, which protects an inmate's right to communicate with individuals outside

3   a jail.  See Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002).

4          Plaintiff alleges that defendants failed to (1) "allow plaintiff reasonable access to a

5   telephone during business hours"; (2) "promulgate a written policy to allow to total separation

6   (T-Sep) pretrial detainees reasonable access to a telephone beyond those telephone calls required

7   by Penal Code § 851.5"; (3) allow plaintiff access to a telephone to make three calls as required

8   by the same section of the California Penal Code; (4) post proper instructions on how to use the

9   telephone.  Complaint at 21-22.  Plaintiff alleges that he filed a petition for writ of habeas corpus

10  in state court in April 2010 concerning the alleged denial of reasonable telephone access.  Id. at

11  22.  On May 28, 2010, defendant Maness filed an informal response in the state superior court in

12  which he acknowledges that when reviewing log books to prepare the response, "it was

13  discovered that [plaintiff] has not routinely received adequate time to . . . make telephone calls.

14  Upon discovery, we took immediate steps to rectify that problem to prevent it from happening to

15  [plaintiff], . . ., again."  Id. at Ex. A.

16         Prison inmates retain a right, protected by the First Amendment, "to communicate

17  with persons outside prison walls.  Use of a telephone provides a *means* of exercising this right."

18  Valdez, 302 F.3d at 1048.  The right may be restricted if the restriction is "'reasonably related to

19  legitimate penological interests.'"  Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1986).

20         Plaintiff has not alleged any facts which suggest that his First Amendment right to

21  communicate with people outside the jail was injured as a result of the alleged limitations on

22  telephone access.  This claim should be dismissed with leave to amend.

23                          6.  Denial of Exercise

24         Plaintiff alleges that the defendants identified as "floor officers" in the complaint

25  violated his constitutional rights by confining him to his cell "for 24 hour periods" and allowing

26  him only a single hour of "outside" exercise in a six month period of incarceration.  Complaint,

1    at 24.  Plaintiff further alleges that the County and defendants McGinness, Maness, Brelje and

2    Madison all had notice of this and failed to take any action to prevent the deprivation.

3    Defendants seek dismissal of this claim on the grounds that the  plaintiff has failed to allege a

4    sufficiently serious deprivation, that his allegations show a lack of deliberate indifference, and

5    that plaintiff has failed to allege any act or omission by the floor officers named as defendants.

6    Defendant County also contends that plaintiff's allegations establish that any denial of exercise

7    was not due to County policy.

8              Exercise is one of the basic human necessities protected by the
               Eighth Amendment. See LeMaire v. Maass, 12 F.3d 1444, 1457
9              (9th Cir.1993) (as amended). Moreover, the Fourteenth
               Amendment requires that pre-trial detainees not be denied adequate
10             opportunities for exercise without legitimate governmental
               objective. See Bell, 441 U.S. at 538, 99 S.Ct. 1861. Determining
11             what constitutes adequate exercise requires consideration of "the
               physical characteristics of the cell and jail and the average length
12             of stay of the inmates." Housley v. Dodson, 41 F.3d 597, 599 (10th
               Cir.1994).

13

14   Pierce v. County of Orange, 526 F.3d 1190, 1211-12 (9th Cir. 2008).  It is unconstitutional to

15   provide "the equivalent of slightly less than thirteen minutes of exercise a day" to pretrial

16   detainees "who spend the bulk of their time inside their cells."  Id. at 1212.

17            The allegations of plaintiff's complaint, and the information provided in the

18   exhibits appended thereto[4] suggest that plaintiff may have been provided with a maximum of

19   three hours of out of cell time per week during the six month period from February 15, 2010 to

20   August 13, 2010.[5]  In Pierce, the United States Court of Appeals noted that "other courts who are

21   held for more than a short time and spend the bulk of their time inside their cells are ordinarily

22   entitled to daily exercise, or five to seven hours of exercise per week, outside their cells." Pierce,

23

24            [4] Exhibits appended to a complaint are a part thereof for all purposes.  See Fed. R. Civ.
     P. 10(c).

25            [5] Exhibit B to the complaint states that for the six week period ending July 21, 2010,
     plaintiff received "dayroom" eighteen times, and for five of the six weeks he was "out of his cell
26   at least one hour" on three separate occasions.  Ex. B to Complaint (emphasis in original).

1   id. (citations omitted).  While the Pierce court did not establish a constitutional minimum, the

2   allegations of plaintiff's complaint are sufficient to state a claim for violation of his right to

3   "meaningful protection of this basic human necessity." Pierce, id.  The allegations against the

4   floor officers, collectively, are sufficient to support this claim against each officer so identified,

5   particularly in light of the contents of Exhibit B, which states, inter alia, that "[p]rior to May of

6   2010, there existed no universal plan or pattern for officers to follow when letting T-Sep inmates

7   out of their cells for exercise . . . Each of the four shifts in the jail had their own methodology for

8   accomplishing . . . exercise standards.  As such, there were times when inmates were not given

9   adequate time out of their cell to exercise . . . .  Such was the case with Tony Low." Ex. B to

10  Complaint.  Moreover, the references in Exhibit B which suggest the absence of a County policy,

11  or satisfaction of a regulatory minimum of three hours of out of cell time per week, are sufficient

12  to state a cognizable claim against the County.

13          For the foregoing reasons, the motions to dismiss this claim should be denied.

14                      7.  Denial of Access to the Law Library

15          In their motion to dismiss, defendants note correctly that this court has already

16  determined that the allegations of the complaint are insufficient to state a cognizable claim based

17  on access to the jail law library.  See Order filed December 14, 2010 at 2-3.  Defendant E.

18  Roberts, the sole individual defendant named in this claim, has been dismissed from this action.

19  See Order filed July 29, 2011.  This aspect of defendants' motions is moot.

20                      8.  Classification Claim

21          Plaintiff claims that he was improperly classified as a Total Separation or T-Sep,

22  initially without a hearing and thereafter without any meaningful opportunity to be heard during

23  review of that classification.  Plaintiff claims this violated his right to due process and several

24  provisions of state law.  Complaint, at 32-37.

25          Defendants contend that the claim is barred by collateral estoppel because it was

26  litigated and actually decided in the state court habeas action that plaintiff avers he filed.  In

14

1    support of this contention, defendants request judicial notice of documents filed in the state

2    superior court and the state court's order rejecting plaintiff's due process claim.  Plaintiff's

3    complaint contains several averments concerning this state court proceeding.  Complaint at 34.

4    Good cause appearing, defendants' request for judicial notice of these documents will be granted.

5         Collateral estoppel, or issue preclusion, prevents relitigation of all "issues of fact

6    or law that were actually litigated and necessarily decided in a prior proceeding against the party

7    who seeks to relitigate the issues." Hawkins v. Risley, 984 F.2d 321, 325 (9th Cir.1993) (quoting

8    Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir.1988)).

9         Federal courts give preclusive effect to issues decided by state courts when a party

10   from a prior state court proceeding attempts to relitigate identical issues in a subsequent federal

11   proceeding.  Allen v. McCurry, 449 U.S. 90, 96 (1980).  A state habeas proceeding decided on

12   the merits can be the basis for precluding a section 1983 action in federal court "if the state

13   habeas court afforded a full and fair opportunity for the issue to be heard and determined under

14   federal standards."  Silverton v. Department of Treasury, 644 F.2d 1341, 1347 (9th Cir.1981),

15   cert. denied, 454 U.S. 895 (1981).

16        To determine the preclusive effect of the prior state habeas judgment on a

17   subsequent section 1983 claim, this court looks to California law.  See Los Angeles Branch

18   NAACP v. Los Angeles Unified Sch. Dist., 750 F.2d 731, 736 (9th Cir.1984) (en banc); 28

19   U.S.C. § 1738.  According to California law, five threshold factors must be considered when

20   determining whether collateral estoppel applies: According to California law, five threshold

21   factors must be considered when determining whether collateral estoppel applies: (1) "the issue

22   sought to be precluded from relitigation must be identical to that decided in a former

23   proceeding;" (2) the issue "must have been actually litigated in the former proceeding;" (3) "it

24   must have been necessarily decided in the former proceeding;" (4) "the decision in the former

25   proceeding must be final and on the merits;" and (5) "the party against whom preclusion is

26   sought must be the same as, or in privity with, the party to the former proceeding." Branson v.

15

1   Sun-Diamond Growers of Cal., 29 Cal.Rptr.2d 314, 324 (Cal.App. 3d Dist.1994) (quoting

2   Lucido v. Superior Court, 272 Cal.Rptr. 767, 769 (1990) (in bank) (1991)).

3           Plaintiff alleges that on April 13, 2010, he filed a petition for writ of habeas

4   corpus "concerning his T-Sep classification."  Complaint at 34.  Plaintiff further alleges that on

5   July 1, 2010, a superior court judge requested a copy of an operations order to determine whether

6   there was "some evidence" to support plaintiff's T-Sep classification.  Id.  Citing Exhibit B to the

7   complaint, plaintiff alleges that on July 21, 2010, defendant McGinness, through defendant

8   Maness "admitted classification operations order 6-03 is incorrect and will be re-written."  Id.[6]

9           On September 17, 2010, the state superior court judge issued an order denying

10  petitioner's claim that he had been improperly classified as T-SEP and denied due process rights

11  in connection with that classification.  Defendants' Request for Judicial Notice No. 6, filed July

12  8, 2011, at 2.  It appears that plaintiff's claims concerning his T-SEP classification were actually

13  litigated and necessarily decided against him in the state court proceeding, and that the order is

14  now final.  Accordingly, these claims are barred by collateral estoppel and should be dismissed.

15                                  9. State Law Claims

16          Defendants seek dismissal of plaintiff's state law claims on the grounds that

17  plaintiff has failed to allege specific acts or omissions by each defendant that violated state law.

18  In addition, defendants contend that several immunities bar the state law claims.  After review of

19  the complaint, the court finds that the state law claims are not well-pleaded.  Accordingly, they

20  should be dismissed.

21          For all of the foregoing reasons, defendants' motions to dismiss should be granted

22  as to plaintiff's ADA claim, granted as to plaintiff's dental claim against defendant Jim and

23  denied as to plaintiff's dental claim against defendants Beach, Gonzales, Maness, Brelje and

24

25          [6] Review of Exhibit B demonstrates that the information the judge was seeking was
    contained in Operations Order 6/03, which "incorrectly references" Operations Order 6/02; that
    incorrect reference appears to be the basis for the representation that Operations Order 6/03
26  would be rewritten.

County, granted as to plaintiff's First Amendment and RLUIPA claims, granted as to plaintiff's

claims concerning denial of recreational reading material and telephone access, denied as to

plaintiff's claim concerning denial of exercise, granted as to plaintiff's classification claim, and

granted as to plaintiff's state law claims. Plaintiff should be granted an opportunity to file an

amended complaint to cure the defects in that part of his First Amendment and RLUIPA claims

based on alleged failure to provide a halal diet, and to cure the defects in his claim concerning

denial of telephone access.  In all other respects, no opportunity to amend should be granted.[7]

II.  Motion to Sever

Defendants also contend that plaintiff has improperly joined claims in violation of

Federal Rule of Civil Procedure 20.  Rule 20 governs impermissible joinder of defendants, not

impermissible joinder of claims.  Defendants have failed to identify with specificity which

defendants were impermissibly joined in this action.

Defendants also contend that plaintiff's claims should be severed "to promote the

objectives of the" Prison Litigation Reform Act.  Should the district court adopt these findings

and recommendations, the number of claims remaining in this action will be substantially

reduced.  Defendants' motion to sever should be denied.

III.  Plaintiff's Motion to Compel

On September 12, 2011, plaintiff filed a motion to compel responses to his first

request for production of documents.  Defendants objected to every request contained in that

request on the ground that discovery was not yet open in this action, and they oppose plaintiff's

---

[7] If plaintiff does choose to file an amended complaint, he should omit from the amended complaint all claims dismissed by the district court and include only those claims for which defendants' motion to dismiss was denied and for which he was granted leave to amend. Plaintiff is informed that the court cannot refer to a prior pleading in order to make any amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  If plaintiff files an amended complaint, the original complaint will no longer serve any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

1   motion on the same ground.  Given their Rule 12(b)(6) motions, defendants' position is well

2   taken.  <u>See</u> <u>Rutman Wine Co. v. E. & J. Gallo Winery</u>, 829 F.2d 729, 738 (9th Cir. 1987) ("The

3   purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of

4   complaints without subjecting themselves to discovery.").  Accordingly, plaintiff's motion to

5   compel will be denied.

6            In accordance with the above, IT IS HEREBY ORDERED that:

7            1.  Plaintiff's September 12, 2011 motion to compel is denied;

8            2.  Defendants' July 8, 2011 request for judicial notice and the County's

9   September 6, 2011 request for judicial notice are each granted as to Exhibits 3, 4, 6, 7, 8, 9, 10,

10  11, 12, and13 for the purpose of defendants' motions to dismiss claims as barred by collateral

11  estoppel and denied as to all other exhibits;

12           3.  The Clerk of the Court is directed to assign this action to a United States

13  District Judge; and

14           IT IS HEREBY RECOMMENDED that:

15           1.  Defendants' July 8, 2011 and September 6, 2011 motions to dismiss be granted

16  in part and denied in part, as follows:

17                a.  Defendants' motions to dismiss be granted as to plaintiff's ADA claim

18  and said claim be dismissed without leave to amend;

19                b.  Defendants' motions to dismiss plaintiff's Fourteenth Amendment

20  dental claim be granted as to defendant Jim and denied as to defendants Beach, Gonzales,

21  Maness, Brelje and County and plaintiff's Fourteenth Amendment claim against defendant Jim

22  be dismissed without leave to amend;

23                c.  Defendants' motions to dismiss be granted as to plaintiff's First

24  Amendment and RLUIPA claims, plaintiff's First Amendment and RLUIPA claims arising from

25  the failure to provide a Holy Quran be dismissed without leave to amend, and plaintiff's First

26  /////

1    Amendment and RLUIPA claims arising from the alleged failure to provide a halal diet be

2    dismissed with leave to amend;

3                    d.  Defendants' motions to dismiss be granted as to plaintiff's claim

4    concerning denial of recreational reading material and said claim be dismissed without leave to

5    amend;

6                    e.  Defendants' motions to dismiss be granted as to plaintiff's First

7    Amendment claim concerning inadequate telephone access and said claim be dismissed with

8    leave to amend;

9                    f.  Defendants' motions to dismiss be denied as to plaintiff's Fourteenth

10   Amendment claim concerning denial of exercise;

11                   g.  Defendants' motions to dismiss be granted as to plaintiff's

12   classification claims and said claims be dismissed without leave to amend; and

13                   h.  Defendants' motions to dismiss be granted as to plaintiff's state law

14   claims.

15          3.  Defendants' July 8, 2011 motion to sever claims be denied;

16          4.  Plaintiff be granted twenty days from the date of any order by the district court

17   adopting these findings and recommendations to file an amended complaint in accordance with

18   these findings and recommendations and any order of the district court adopting them; and

19          5.  Defendants not be required to answer any amended complaint until it has been

20   screened by this court pursuant to the provisions of 28 U.S.C. § 1915.

21          These findings and recommendations are submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

23   days after being served with these findings and recommendations, plaintiff may file written

24   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

25   Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

26   /////

1   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

2   F.2d 1153 (9th Cir. 1991).

3   DATED: February 16, 2012.

4

5                                              UNITED STATES MAGISTRATE JUDGE

6

7   12
    low2398.mtd
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26